UNITED STATES DISTRICT COURT                 b

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| LUV N' CARE, LTD. | CIVIL ACTION 3:17-CV-00628 |
|---|---|
| VERSUS | JUDGE JAMES |
| MORRIS E. COHEN, *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a petition removed from a Louisiana state court by Defendants Morris E. Cohen and Lee A. Goldberg. Defendants premise federal jurisdiction on diversity of citizenship. Defendants were ordered to show the action satisfies the $75,000 threshold for diversity jurisdiction (Doc. 9).

Defendants filed a "Motion to Enjoin Related State Court Proceedings" (Doc. 6) and a "Motion to Dismiss and Transfer for Improper Venue" (Doc. 21). Plaintiff Luv N' Care filed a Motion to Remand, asking for Attorney Fees (Doc. 10).

It is recommended that the Motion to Remand (Doc. 10) be granted for lack of subject matter jurisdiction, and the Motion to Enjoin and Motion to Dismiss and Transfer (Doc. 21) be denied.

## I.    Background

Goldberg Cohen, L.L.C. is a law firm formed in 2010 to represent Luv N' Care ("LNC") and its affiliate Admar International, Inc. in their intellectual property matters (Doc. 6-1). Cohen is the nephew of the three founders of LNC and a first cousin to its present-day shareholders (Doc. 6-5).

Cohen and Goldberg represented LNC *pro hac vice* in a Louisiana proceeding filed in the Louisiana Fourth Judicial District Court in Ouachita Parish, <u>Luv N' Care, Ltd. v. Jackel International Limited, et al.</u>, No. 10-1891 ("the <u>Jackel</u> case") (Doc. 6-6).[1]   At some point in the <u>Jackel</u> case, LNC terminated Goldberg Cohen, L.L.C.'s representation and employed new counsel.

Defendants contend that, in November 2015, LNC filed a suit against Goldberg and Cohen in the United States District Court for the Southern District of New York for malpractice in various cases (Doc. 601).  <u>See</u> <u>Luv N' Care Ltd., et al. v. Goldberg Cohen, LLP, et al.</u>, No. 15-9248 (S.D.N.Y.).  On August 19, 2016, that action was dismissed as time-barred.  That same day, Goldberg and Cohen filed a suit against LNC in the United States District Court for the Southern District of New York for unpaid attorney fees.  <u>See</u> <u>Goldberg Cohen, LLP v. Luv N' Care, Ltd, et al.</u>, No. 1:16-cv-06576 (S.D.N.Y.).  That action is still pending.

On February 3, 2017, LNC asked Cohen and Goldberg to turn over their client file in the <u>Jackel</u> case to LNC or its new counsel.  On February 10, 2017, Cohen and Goldberg expressly refused to turn over LNC's client file.

On February 23, 2017, LNC filed a Rule to Show Cause against Goldberg and Cohen in the <u>Jackel</u> case, asking the state court to order Goldberg and Cohen to turn over LNC's client file to LNC's new counsel (Doc. 6-1).  Goldberg and Cohen mention

---

[1] There was also a case filed in the United States District Court for the Eastern District of Texas, <u>Luv N' Care, Ltd. et al v. Jackel International, Ltd., et al.</u>, 2:14-cv-00855 (E.D. Tex).  It does not appear that either Cohen or Goldberg was ever involved in that case.

a hearing on the Rule to Show Cause was held on April 19, 2017, but do not state the result of that hearing (Doc. 6-1).

On March 13, 2017, LNC sued Cohen and Goldberg (presumably the members/owners of Goldberg Cohen, L.L.C.) for malpractice in a separate suit brought in the Louisiana 4th Judicial District Court, <u>Luv N' Care v. Cohen and Goldberg</u>, No. 17-0811 (Doc. 6-5). LNC alleges that Cohen and Goldberg failed to turn over LNC's client file after they were terminated as LNC attorneys. LNC seeks return of the file and related damages (Doc. 6-5).

Cohen and Goldberg removed LNC's state court legal malpractice case, No. 17-0811, to this Court on May 11, 2017 (Docs. 1, 6-7). Cohen and Goldberg also filed a "Notice" of its removal of the "related" action in the <u>Jackel</u> case. Cohen and Goldberg then filed a Motion to Enjoin Related State Court Proceedings (Doc. 6), asking this Court to enjoin the state court from proceeding against them (presumably for return of LNC's client file) in either the state court malpractice case that was removed to this Court, or in the <u>Jackel</u> case.

## II.    <u>Law and Analysis</u>

### A.    <u>Diversity of Citizenship</u>

The diversity statute – 28 U.S.C. § 1332 – is satisfied upon a showing of: (1) diversity of citizenship between the parties; and (2) an amount in controversy in excess of $75,000, exclusive of interest and costs. "Complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." <u>Harvey v. Grey Wolf Drilling Co.</u>, 542 F.3d 1077, 1079

(5th Cir. 2008) (internal citation and quotation omitted). Further, "when jurisdiction depends on citizenship, citizenship must be *distinctly* and *affirmatively* alleged." Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N. Am., 841 F.2d 1254, 1259 (5th Cir. 1988). The Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). This duty persists throughout all phases of the litigation, "even after trial and the entry of final judgment." Id. at 506-07.

The citizenship of an individual is his or her domicile, meaning the place where an individual resides and intends to remain. Acridge v. Evangelical Lutheran Good Samaritan Soc., 334 F.3d 444, 448 (5th Cir. 2003). A corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C., 757 F.3d 481, 483 (5th Cir. 2014).

LNC, Ltd. is a Louisiana corporation with its principal place of business in Louisiana. Defendant Morris E. Cohen is a citizen of New York. Defendant Lee A. Goldberg is a citizen of New Jersey. Therefore, there is diversity of citizenship between the parties.

### B.    The amount in controversy is less than $ 75,000.

The Court ordinarily consults the state court petition to determine the amount in controversy. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) (citing St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250,

1253 (5th Cir. 1998).  The state court petition shows that LNC asked for damages "in an amount less than $75,000" for additional expenses incurred due to Defendants' failure to turn over the client file.  Therefore, the state court petition indicates this case does not meet the jurisdictional threshold.

The Fifth Circuit has established a clear analytical framework for resolving disputes concerning the amount in controversy for actions removed from Louisiana state courts pursuant to § 1332(a)(1).  See Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 882–83 (5th Cir. 2000) (citing Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999)).  Because plaintiffs in Louisiana state courts, by law, may not specify the value of claimed damages, La. C. Civ. P. art. 893, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.  See id.  The defendant may prove that amount either by demonstrating that the claims are likely above $75,000 in sum or value, or by setting forth the facts in controversy that support a finding of the requisite amount.  See id.

Cohen and Goldberg allege they filed a parallel suit filed in a New York federal court for attorney fees in excess of $75,000.  Cohen and Goldberg argue they have a lien on their file for that amount and have the right to retain their file until they are paid.  Goldberg and Cohen further point out that their retainer agreement with LNC has a choice of law provision that specifies New York law applies to any fee disputes (Doc. 6-3).

Goldberg and Cohen are apparently arguing that LNC's client file is worth the amount of attorney fees owed, and that the jurisdictional amount is established

thereby.    There are three problems with Goldberg and Cohen's argument: (1) Plaintiff's clam is for less than $75,000; (2) New York law does not give attorneys an absolute right to retain a client's file on which they have a lien; and (3) Louisiana Rules of Professional Conduct apply to all attorneys practicing in a Louisiana tribunal.

### 1.  The Plaintiff's claim is for less than $75,000.

A court can determine that removal was proper if it is facially apparent that the claims are likely above the jurisdictional amount.  See Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir.1995).  If not, a removing attorney may support federal jurisdiction by setting forth the facts in controversy—preferably in the removal notice, but sometimes by affidavit—that support a finding of the requisite amount.  See Allen, 63 F.3d at 1335.  Where the "facially apparent test" is not met, the district court can then require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.  See Allen, 63 F. 3d at 1336.

LNC states in its brief that its legal malpractice action is based on Defendants' failure to return the Jackel case file and related damages (Doc. 10-1, p. 10/25).  LNC points out that its state court Petition specifically seeks damages "in an amount less than $ 75,000" (Doc. 10-1, p. 11/25).  LNC also argues the fee dispute does not involve legal fees owed for the Jackel case, but is based on a retainer contract, so the fee dispute is unrelated to its claim on the Jackel case file (Doc. 10-1, p. 12/25).

It is apparent on the face of the state court petition that LNC's claim is for less than $ 75,000.

2. **New York law does not grant Defendants an absolute right to retain their client's file pursuant to a lien for unpaid attorney fees.**

Goldberg and Cohen argue that LNC owes them over $ 1.4 million for unpaid attorney fees and that, under New York law, they have a right to retain their client's file pursuant to a common law lien until their fees are paid. Defendants contend New York law applies to the dispute pursuant to a choice of law provision in their retainer contract. Defendants are apparently arguing that LNC's file is worth $ 1.4 million.

The federal courts in New York recognize an attorney's "retaining lien" on a case file pending payment of his fees. See Wynn v. AC Rochester, 34 Fed. Appx. 806, 807 (2d Cir. 2002). When an attorney in a contingency fee case is discharged by his client without cause and before the conclusion of the case—*i.e.,* before the client's right *vel non* of recovery has been established–the attorney has a common law retaining lien over the file to secure the payment of both his disbursements and the fair and reasonable value of his services under *quantum meruit.* Generally, an attorney may not be compelled to turn over the file until a hearing has been held to ascertain the amount of his attorney fees and the client has paid such in full or provided security therefor because, once the attorney relinquishes possession of the file, the retaining lien is extinguished. See Tops Markets, Inc. v. Quality Markets, Inc., 2001 WL 392082, at *2 (W.D.N.Y. 2001).

However, New York courts have, in many cases, ordered attorneys to deliver to their clients papers and records received by the attorneys in the course of litigation,

though through such delivery the attorney's retaining lien was destroyed.  See Tops Markets, Inc., 2001 WL 392082, at *3 (citing Robinson v. Rogers, 237 N.Y. 467, 471 (1924)).  The recognized power of the court to compel an attorney to deliver to his client papers, upon which the attorney has a lien, is not based upon any assumed right of the court to destroy even a common-law lien when other adequate security has been furnished, but rather upon the control by the courts of their own officers, and their power to compel attorneys to act equitably and fairly towards their clients.  See id.  Where the retention of papers by an attorney serves to prejudice a client, the attorney should be required to deliver up the papers upon receiving proper security for his compensation, because insistence upon his lien under such circumstances is not in accordance with the standards of conduct that a court may properly require of its officers.  See id.

Goldberg and Cohen were terminated from representing LNC midway through the Jackel case.  LNC contends its new counsel needs its client file to continue the case in an efficient, orderly, and cost-effective manner.  Pursuant to New York state law, the Court may order Goldberg and Cohen to turn over its file to LNC's new counsel under these circumstances.  As the New York courts recognize, maintaining standards of proper attorney conduct takes precedence over the attorney's common law lien.  Moreover, the lien appears to apply only in contingency fee cases.  Goldberg and Cohen had a retainer contract with LNC.  Therefore, regardless of whether New York law applies in this instance, it does not appear to support Defendants in this case.

Accordingly, while the amount of attorney fees in dispute is in excess of $75,000, the issue as to the amount of attorney fees owed is not before this Court. Only LNC's claim for damages due to Defendants' failure to turn over LNC's client file is at issue. The file is obviously not worth $ 1.4 million (particularly since Goldberg and Cohen do not have an absolute right to retain the file under New York law). Moreover, LNC contends the fee dispute involves their retainer contract and does not involve attorney fees for the Jackel case.

Defendants also contend New York law applies pursuant to a clause in their retainer contract. However, it is worth pointing out that Goldberg and Cohen were practicing law in a Louisiana state court when the issue of who had the right to the client file arose. La. St. Bar Art. 16, R.P.C. Rule 8.5 states:

Rule 8.5. Disciplinary Authority; Choice of Law

(a)     Disciplinary Authority. A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs. A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.

(b)     Choice of Law. In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows:

(1)     for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and

(2)     for any other conduct, the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. A lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably

believes the predominant effect of the lawyer's conduct will occur.

Pursuant to Rule 8.5, by representing clients in a suit filed in a Louisiana court, Goldberg and Cohen subjected themselves to the rules in Louisiana governing their professional conduct.

Louisiana does not recognize an attorney's lien over a case file. An attorney's client file is the property of his client. See Hunter v. Blazier, 2016-253 (La. App. 3d Cir. 10/5/16), 203 So.3d 515, *5. Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred. See La. St. Bar Art. 16, R.P.C. Rule 1.16. Upon written request by the client, the lawyer shall promptly release to the client or the client's new lawyer the entire file relating to the matter. See La. St. Bar Art. 16, R.P.C. Rule 1.16. The lawyer may retain a copy of the file but shall not condition release over issues relating to the expense of copying the file or for any other reason. See La. St. Bar Art. 16, R.P.C. Rule 1.16. The responsibility for the cost of copying shall be determined in an appropriate proceeding. La. St. Bar Art. 16, R.P.C. Rule 1.16.

Therefore, in Louisiana, terminated attorneys are not permitted to retain their client's files, regardless of whether their fees have been paid. Neither LNC's client file nor this controversy are valued by the amount of Defendants' claim for unpaid attorney fees.

3. <u>**The amount in controversy is less than $ 75,000 and this Court lacks subject matter jurisdiction.**</u>

Defendants have not carried their burden of proving the amount in controversy in this case is likely above $75,000.  Therefore, Luv N Care's Motion to Remand (Doc. 10) should be granted and this case should be remanded to the Louisiana state court.

LNC also asks for costs, expenses, and attorney fees (Doc. 10).  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c). There is no automatic entitlement to an award of attorney's fees.  <u>See</u> <u>Valdes v. Wal-Mart Stores, Inc.</u>, 199 F.3d 290, 292 (5th Cir. 2000).  The clear language of the statute makes such an award discretionary.  <u>See</u> <u>Valdes</u>, 199 F.3d at 292.  The mere determination that removal was improper does not require a district court to award attorney fees.  <u>See</u> <u>Valdes</u>, 199 F.3d at 292.  The Court does not consider the motive of the removing defendant.  <u>See</u> <u>Valdes</u>, 199 F.3d at 292.  Instead, the Court considers whether the defendant had objectively reasonable grounds to believe the removal was legally proper at the time of removal.  <u>See</u> <u>Valdes</u>, 199 F.3d at 293.

At the time of removal, Defendants believed they had a valid lien on the case file based on unpaid attorney fees in excess of $ 75,000.  Louisiana law applies.  Since Defendants had an objectively reasonable basis for attempting to remove this case to federal court, LNC's motion for attorney fees and costs (Doc. 10) should be denied.

C.   **LNC's Motion to Remand should be granted because Defendants' removal was untimely.**

LNC also argues that Defendants' Notice of Removal was untimely because it was filed beyond the 30-day removal period.  LNC's argument rests on FedEx receipts for service of the petition.

The Fifth Circuit has explained that 28 U.S.C. § 1446(b), read as a whole, provides two steps for determining whether a defendant timely removed a case. The first paragraph provides that if the case stated by the initial pleading is removable, then notice of removal must be filed within thirty days from the receipt of the initial pleading by the defendant.  The second paragraph provides, if the case stated by the initial pleading is not removable, then notice of removal must be filed within 30 days from the receipt of an amended pleading, motion, order, or other paper from which the defendant can ascertain that the case is removable.  See Chapman v. Powermatic, Inc., 969 F.2d 160, 161 (5th  Cir. 1992), cert den., 507 U.S. 967 (1993).

If a plaintiff initially could have filed his action in federal court, yet chose to file in state court, even if a statutory provision prohibits the defendant from removing the action and the defendant removes despite a statutory proscription against such removal, the plaintiff must object to the improper removal within 30 days after the removal, or he waives his objection.  See 28 U.S.C. § 1447(c).  Only in the case of a lack of subject matter jurisdiction-such as no diversity of citizenship, or the absence of a federal question if that were the sole ground for removal-may the plaintiff object to removal after the 30 day limit. Any other objection is procedural and waived after

thirty days. <u>Williams v. AC Spark Plugs Div. of Gen. Motors Corp.</u>, 985 F.2d 783, 787 (5th Cir. 1993).

This case was filed in the Louisiana state court on March 13, 2017 (Doc. 19-1, p. 1/166). According to an affidavit by Kyle Phillip Bailey, a paralegal for Luv N' Care, Ltd., and attached FedEx receipts, copies of the petition were delivered to each Defendant on March 22, 2017 (Doc. 19-1, pp. 7-10/166). Defendants removed the case to this Court on May 11, 2017. LNC timely filed its motion to remand on June 8, 2017 (Doc. 10). Defendants' removal was clearly more than 30 days after the petition was received by defendants. <u>See</u> 28 U.S.C. § 1446(b).

However, Defendants contend LNC failed to effect service on them in compliance with the Louisiana Long-Arm Statute, La. R.S. 13:3204 (A). Defendants argue service of the petition by a commercial courier had to be made either personally or through their agent. Thus, Defendants contend the removal period did not begin with the defective service of process and their removal was not untimely.

Fed.R.Civ.P. 12(g) provides that a party who makes a motion under rule 12, but who "omits therefrom any defense or objection then available to him which (rule 12) permits to be raised by motion," may not thereafter "make a motion based on the defense or objection so omitted." <u>See</u> <u>Golden v. Cox Furniture Mfg. Co., Inc.</u>, 683 F.2d 115, 118 (5th Cir. 1982). If a party does not make a motion under rule 12, he must include the defenses of insufficiency of service of process and lack of personal jurisdiction in his responsive pleading. <u>See</u> <u>Golden</u>, 683 F.2d at 118. "The penalty for failing to raise any of these defenses at this point is waiver." <u>See</u> <u>Golden</u>, 683 F.2d

at 118 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure s 1391, at 853 (1969)); Fed. R. Civ. P. 12(h)(1)(A). "Thus, the message conveyed by the present version of Rule 12(h)(1) seems quite clear. It advises a litigant to exercise great diligence in challenging personal jurisdiction, venue, or service of process. If he wishes to raise any of these defenses he must do so at the time he makes his first defensive move–whether it be a Rule 12 motion or a responsive pleading." See id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure s 1391, at 855 (1969)); see also 2A J. Moore & J. Lucas, Moore's Federal Practice P 12.23 (2d ed. 1982).

Plaintiff's state petition was filed March 13, 2017 (Doc. 19/1, p. 1/166). Defendants filed a Notice of Removal in this Court on May 11, 2017 (Doc. 1). On May 12, 2017, Plaintiff moved for a preliminary default in state court (Doc. 19/1, p. 11/166), and on May 15, 2017, Defendants filed a Notice of Filing Notice of Removal in state court (Doc. 19-1, p. 13/166).

After Defendants removed this case (Doc. 1), they filed a "Motion to Enjoin Related State Court Proceedings" (Doc. 6). Plaintiff responded with a Motion to Remand (Doc. 10). Defendants then filed a "Motion to Dismiss and Transfer for Improper Venue," pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §§ 1404, 1406(a), to the Southern District of New York (Doc. 21). Defendants did not raise the issue of insufficient service of process in their motion. It was not until Defendants filed an "Opposition to Plaintiff's Motion to Remand" (Doc. 25) that they raised the argument that service of process was defective. However, Defendants did not raise that

14

argument in a motion to dismiss pursuant to Rule 12(b)(4), and they did not raise the claim with their first Rule 12(b) motion to dismiss.

Defendants raised their defective service claim too late, Rule 12(g)(2), and it is waived, Rule 12(h)(1)(A). Defendants' defective service claim should have been raised in their initial Rule 12(b) motion to dismiss.

Since Defendants waived their claim of defective service, Defendants' 30 day removal period began with Plaintiff's service on Defendants on March 22, 2017 (Doc. 19-1, pp. 7-10/166). Since Defendants did not remove the case to this Court until May 11, 2017, their removal was clearly untimely. Therefore, Plaintiff's Motion to Remand should be granted due to the untimeliness of the removal, also.

### D.  Defendants' Motion to Enjoin and Motion to Dismiss and Transfer should be denied.

Defendants filed a Motion to Enjoin Related State Court Proceedings (Doc. 6). "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A. § 2283.

Defendants argue the state court proceedings should be enjoined due to the removal of this case to federal court.[2] As already discussed, this Court does not have subject matter jurisdiction over this case. Moreover, Defendants' motion is

---

[2] See Mitchum v. Foster, 407 U.S. 225, 234 at n.12 (1972) ("The federal removal provisions, both civil and criminal, 28 U.S.C. §§ 1441–1450, provide that once a copy of the removal petition is filed with the clerk of the state court, the 'State court shall proceed no further unless and until the case is remanded.'"); see also 28 U.S.C. § 1446(d).

redundant because 28 U.S.C. § 1446(d) provides for an automatic injunction in a state case when a copy of the notice of removal is filed with the clerk of the state court. Therefore, Defendants' Motion to Enjoin Related State Court Proceedings (Doc. 6) should be denied.

Defendant also filed a Motion to Dismiss and Transfer for Improper Venue (Doc. 21), asking the Court to transfer the case to the Southern District of New York. A related case concerning attorney fees and the retainer contract is before a United States District Court in New York. However, since there does not appear to be federal diversity jurisdiction over this case in any federal court, a transfer to another federal court would be improper. Accordingly, Defendants' Motion to Dismiss and Transfer (Doc. 21) should be denied for lack of subject matter jurisdiction.

## III.   Conclusion

Based on the foregoing, IT IS RECOMMENDED that LNC's Motion to Remand (Doc. 10) be GRANTED for lack of subject matter jurisdiction and because removal was untimely. This case should be REMANDED to the Louisiana Fourth Judicial District Court in Ouachita Parish.

IT IS FURTHER RECOMMENDED that LNC's Motion for Attorney Fees, Costs, and Expenses (Doc. 10) be DENIED.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Enjoin Related State Court Proceedings (Doc. 6) be DENIED.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss and Transfer for Improper Venue (Doc. 21) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this ___5th___ day of October, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge